# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| CSG FORTE PAYMENTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ABN NETWORK LLC, d/b/a QUICK HEALTH <br><br> Defendant. | Case No. _____ <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff CSG Forte Payments, Inc. ("Forte" or "Plaintiff"), by and through undersigned counsel, for its causes of action against Defendant ABN Network LLC d/b/a Quick Health ("Quick Health" or "Defendant"), states as follows:

## PARTIES

1. Plaintiff CSG Forte Payments, Inc. is a corporation organized under the laws of the State of Delaware, having its principal place of business at 2121 Providence Drive, Suite 151, Fort Worth, TX 76106.

2. Defendant ABN Network LLC, d/b/a Quick Health, is a Florida limited liability company with its principial place of business at 7901 4th Street North, Suite 300, Saint Petersburg, FL 33702. Upon information and belief, there is one member of Quick Health, Priscilla Lopez Sok, who resides in Florida. Upon information and

belief, Ms. Sok and Quick Health are alter egos.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over Forte's claims under 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000.

4.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because, upon information and belief, the sole member of Quick Health resides in this district and a substantial part of the events or omissions giving rise to Forte's claims occurred in this district.

## BACKGROUND

5.      Forte provides payment processing and related services including but not limited to Automated Clearing House ("ACH"), Credit and Debit Card payment processing, account verification and customer identification services (the "Services") to its customers ("Merchants") who are engaged in the business of selling goods or services to customers that may be businesses or consumers.

6.      Upon information and belief, Quick Health markets and sells health insurance savings plans on behalf of third parties.

7.      On or about February 28, 2022, Forte and Quick Health, as a "Merchant," entered into a Merchant Services Agreement (the "Agreement") whereby Forte agreed to provide payment processing services to Quick Health and

in exchange Quick Health agreed to pay Forte pursuant to the terms of the Agreement. A copy of the Agreement is attached here as **Exhibit 1**.

8. Because it is pertinent to this dispute, a description of common payment processing terms and processes is provided below.

### A. Payment Processing

9. Forte processes payments for Merchants like Quick Health, including those made via the ACH System as well as payments via credit and debit cards.

10. The ACH System is one of the largest payment networks in the United States and is typically used for transactions like automatic recurring payments and one-time credit and debit payments to or from a bank account. The ACH System is governed by operating rules imposed by the National Automated Clearing House Association ("NACHA") Rules.

11. The ACH system permits origination of both credit and debit entries (individual payment transactions) to a customer bank account, meaning funds may be debited or credited to the account, with the account-holder's authorization. Card payments are made through card brand networks.

12. The party that initiates the transaction is the "Originator."

13. In this case, Quick Health acts as the Originator as it initiates transactions by providing instruction to Forte to process payments on its behalf. Forte stands between Quick Health and Forte's originating depository financial

institution ("Originating Bank") for purposes of sending the payment instructions to Forte's Originating Bank to pull funds from consumers' bank accounts who have authorized payments be made to Quick Health. A similar process occurs when the consumer pays via a credit or debit card.

14. Below is a simplified explanation of the process for "pulling" funds through the ACH system.

### B. "Pull" Transactions

15. For "pull" transactions, Quick Health instructs Forte to initiate a transaction on Quick Health's behalf and warrants to Forte that those transactions were properly authorized.

16. Forte goes through its Originating Bank and originates a request to pull money (for this example, $100) from the consumer's bank account. Forte's Originating Bank communicates with the consumer's bank which debits the authorized amount of $100 from the consumer's account and then Forte's Originating Bank credits $100 to Forte's account with the Originating Bank.

17. Forte settles up with Quick Health by reconciling payments that are successfully made to or from Quick Health's account on a regular basis and, if the $100 is successfully pulled from the consumer's account, the $100 is debited from Forte's account and credited to Quick Health's account at Quick Health's bank. This process is similar to what occurs when a consumer pays via a credit or debit card.

### C. "Chargebacks"

18. A "chargeback" describes a situation whereby a consumer disputes a charge on their credit card or disputes the debit transaction with their bank.

19. To use the example above of a typical "pull" transaction, Forte pulls the $100 from the consumer's account, then settles with Quick Health by crediting the $100 to Quick Health's account. However, once a chargeback occurs, the amount being charged back is automatically pulled from Forte's account with its Originating Bank and is returned to the consumer per standard ACH and card brand network processes and NACHA and card brand rules (collectively, the "Rules"). The $100 is then debited from Quick Health's Settlement Account to complete the chargeback process. This all happens as a transaction flow in an automated fashion per each party's obligations under the Rules and per the Agreement between Forte and Quick Health.

20. This case arises out of Quick Health's actions to stop payment on its Settlement Account, which forces Forte, in order to stay in compliance with its obligations under the Rules and agreements with its banking partners, to essentially front the payment of the refunded $100 to the consumer, while Quick Health simultaneously retained the $100 originally credited to it by Forte.

### D. Quick Health's Liability Under the Agreement

21. Section 4.10 of the Agreement states, in relevant part: "Merchant

specifically authorizes FORTE to (i) to debit and credit Merchant's designated bank account in order to carry out its duties under this Agreement and (ii) debit its designated bank account and any account owned by the same entity as Merchant . . . to collect any payment obligation owed to FORTE by Merchant hereunder." (Ex. 1, Agreement, ¶ 4.10.)

22. Section 5.4 of the Agreement states: "Failure to pay any amount due to FORTE within the time period or on the terms set forth in this Section shall constitute a material breach of the Agreement by [Quick Health]. FORTE shall assess a late fee of one and one-half percent (1 ½%) per month on all amounts due and payable after the monthly deadline. In addition to imposing such late fees, FORTE may elect to terminate the Agreement, which shall terminate Merchant's access to the Services in accordance with Section 18 below. Additionally, a $25.00 fee shall be assessed for any return of a debit processed to the designated bank account." (Ex. 1, ¶ 5.4.)

23. Section 5.5 of the Agreement permits Forte to offset against any amount payable by Forte to Quick Health, any amounts owed to Forte related to Services provided to Quick Health, "including but not limited to chargebacks or returns posted to [Quick Health's] account, or any fees, fines or costs incurred damages sustained by FORTE as a result of [Quick Health's] violation, breach or non-performance of its obligations under the Agreement." (Ex. 1, ¶ 5.5.)

24. Similarly, section 6.5 of Appendix B to the Agreement states:

"Merchant acknowledges FORTE's right to reimbursement of any chargebacks or returns that post to Merchant's account that FORTE is unable, for any reason, to debit from Merchant's bank account."  (Ex. 1, ¶ 6.5 of App'x B.)

25. Section 5.6 states: "In the event the funds in the designated account are insufficient to cover [Quick Health's] obligations, [Quick Health] agrees to submit payment of amounts owing to FORTE upon demand and through alternative means. Unless otherwise agreed upon, FORTE may debit any alternative account maintained by [Quick Health] for the amounts due and owing without further notice to or approval from [Quick Health]."  (Ex. 1, ¶ 5.6.)

### E. Forte Terminates the Merchant Services Agreement

26. The Agreement provides that Forte is entitled "to re-evaluate [Quick Health's] account, including but not limited to Transaction volume, chargeback ratio, [Quick Health's] current financial position and other risk indicators. FORTE may undertake such a re-evaluation as it deems necessary throughout the course of FORTE's business relationship with [Quick Health]." (Ex. 1, Agreement, ¶ 19.)

27. Following such a re-evaluation, on April 3, 2024, Forte notified Quick Health that it was electing to exercise its right to terminate the Agreement (the "Termination Notice").  The Termination Notice stated that the termination was based on excessive chargeback and/or retrieval requests and the overall return ratio for Quick Health.  The Termination Notice also stated that the termination would

7

become effective on May 3, 2024 and that Quick Health's account had been placed on funding hold as of April 2, 2024. Finally, the Termination Notice stated that "[a]ny funds held after the closure of your account will be reviewed and credited to your account on file less any funds owed, per the terms of your merchant agreement."

28. Despite Forte's termination of the Agreement, certain of Quick Health's obligations survived, including its obligation to allow Forte to debit its Settlement Account in the event of a chargeback or return. Section 20.7 states: "Upon the effective date of termination of the Agreement, Merchant's rights hereunder to use the Services shall cease, but Merchant's obligations in connection with any Transactions processed by FORTE on behalf of [Quick Health] (whether before or after such termination) shall survive termination." (Ex. 1, ¶ 20.7.)

### F.  The Promissory Note

29. On August 1, 2024, Alan Redmond, on behalf of Quick Health, executed a promissory note in favor of Forte (the "Note") for "$751,648.43 plus the amounts of any future chargebacks and related fees (the "Principal Sum")." A copy of the Note is attached here as **Exhibit 2.**

30. Mr. Redmond expressly represented that he had authority to execute the Note on behalf of Quick Health. (Ex. 2, Note, ¶ 4.)

31. The Note indicates that "all outstanding principal and interest on this

Note shall be due and payable in full on July 7, 2025." (Ex. 2, ¶ 1.)

32. The Note also indicates that of "the Principal Sum, $219,138.75 represents fees for services provided, which may increase as a result of services related to future chargebacks." (Ex. 2, ¶ 2.) In the event that the Principal Sum increased due to future chargebacks, "weekly installments will continue until the entire remaining balance of the Principal Sum, which includes any chargeback incurred after the date of this Note, and all accrued but unpaid interest thereon shall be paid in full. The Principal Sum shall be subject to reduction or increase by the amount of chargebacks that are made by consumers." (*Id.*)

33. The Note required Forte to provide a monthly list of all consumer chargeback transactions resulting in a reduction of the Principal Sum. (*Id.*) Forte has complied with this obligation.

34. Under the terms of the Note, Quick Health agreed to pay the Principal Sum to Forte in weekly installments pursuant to a payment schedule listed in the Note. (*Id.*)

35. The first payment was due on June 7, 2024 in the amount of $5,000. The Note shows that payment on the payment schedule was crossed out and initialed "A.R." for Alan Redmond. Quick Health did make the first payment on June 7, 2024.

36. The payment schedule then shows that the second payment would be

due on July 30, 2024, also in the amount of $5,000. Forte received a payment of $5,000 on August 12, 2024.

37. Under the payment schedule, the third payment was due on August 7, 2024 in the amount of $20,000.

38. Quick Health failed to make the August 7, 2024 required payment of $20,000 to Forte.

39. The Promissory Note states that it would be "considered in default if payment of any scheduled amount is not paid within seven (7) days of the delivery of a Notice of Default emailed to Maker at Alanredmond23@gmail.com." (Ex. 2, ¶ 5.)

40. On August 16, 2024, pursuant to the terms of the Note, Forte emailed a written notice of default to Quick Health at alanredmond23@gmail.com (the "Notice of Default").

41. Pursuant to the Note, Quick Health had seven (7) days following the August 16, 2024 Notice of Default to cure. (Ex. 2, ¶ 5.)

42. Quick Health failed to cure its default within 7 days. Forte did not receive the $20,000 payment from Quick Health until August 27, 2024.

43. The Note states that upon a default, Forte may, "without further notice, at its option, and without any risk of waiver based on delay in enforcement:

(a) Make all or part of the amount owing by the terms of this Note immediately

due;

(b) Use any and all remedies available under any and all State and Federal laws; and

(c) Set off any amount due and payable under the terms of the Agreement against any amounts due under this Note, unless prohibited by law."

(Ex. 2, ¶ 5.)

44. As of the filing of this Complaint, the Principal Sum owed by Quick Health under the terms of the Note is $ 970.964.92.

45. The Note provides that: "Additionally, in the event of a default in a payment of this Note when due, and the same is placed in the hands of an attorney for collection, or suit is brought on same . . . then the Maker agrees and promises to pay reasonable attorneys' fees and other costs and expenses associated, directly or indirectly, with the collection of the amounts owed under this Note." (Ex. 2, ¶ 5.)

## COUNT I
### *Breach of Contract- Specific Performance*

46. Forte repeats and realleges the allegations in paragraphs 1 through 45 of this Complaint as if they were fully set forth herein.

47. Forte and Quick Health entered into the Merchant Services Agreement, which constitutes a binding and enforceable contract between the parties.

48. Forte has fully performed its obligations under the Agreement.

49. Quick Health has breached the terms of the Agreement by refusing to

allow Forte to access its account for purposes of recouping amounts refunded to Quick Health's consumers as a result of Chargebacks and Returns. Quick Health's actions constitute a material breach.

50. "Settlement Account" is defined in the Agreement as an "account established and maintained by Merchant." Quick Health is the "Merchant."

51. Forte is contractually authorized under the Agreement to debit Quick Health's Settlement Account to be made whole for all Chargebacks and Returns.

52. Quick Health has failed to maintain its Settlement Account and placed a stop payment on its Merchant account that has prevented Forte from debiting the Settlement Account to be made whole from indemnification payments Forte made to Quick Health's Originating Bank.

53. Quick Health's obligations to maintain its Settlement Account such that Forte may continue to debit amounts for transactions processed by Forte survived termination of the Agreement. Ex. 1, § 20.7.

54. Forte is entitled to an order for specific performance, ordering Quick Health to perform its obligations under the Agreement and remove the stop payment on the Settlement Account.

55. Forte has no adequate remedy at law, and justice requires entry of an order for specific performance.

## COUNT II
### *In the Alternative, Unjust Enrichment*

56. Forte repeats and realleges the allegations in paragraphs 1 through 55 of this Complaint as if they were fully set forth herein.

57. Quick Health has been unjustly enriched by its refusal to allow Forte to access its Settlement Account in order to recoup Funds reimbursed to Quick Health's consumers as a result of chargebacks and returns.

58. As a result of Quick Health's actions, Forte suffered an impoverishment.

59. Forte's impoverishment was the direct result of Quick Health's improper retention of the Funds and its decision to place a stop payment on its Settlement Account.

60. Quick Health has no justification for refusing to allow Forte to access the Settlement Account to recoup the chargeback and return Funds.

61. Quick Health has been unjustly enriched by the improper retention of the chargeback and return funds, to Forte's detriment.

62. Forte has no adequate remedy at law.

## COUNT III
### *Conversion*

63. Forte repeats and realleges the allegations in paragraphs 1 through 62 of this Complaint as if they were fully set forth herein.

64. Quick Health intentionally prevented Forte from accessing Quick Health's Settlement Account for purposes of recouping the amounts charged back that Forte paid to Quick Health but which were later disputed by Quick Health's consumers and refunded by Forte to the consumer from its own account (the "Funds").

65. Forte has a property interest in the Funds being held by Quick Health.

66. Forte has an immediate right to possession of the Funds being held by Quick Health.

67. Quick Health's possession of the Funds is wrongful and Quick Health is possessing the Funds as if they were its own.

## COUNT IV
### *Breach of Promissory Note*

68. Forte repeats and realleges the allegations paragraphs 1 through 67 of this Complaint as if they were fully set forth herein.

69. Quick Health executed and delivered the Note to Forte pursuant to which it agreed to pay and perform all obligations due and owing thereunder.

70. Forte is the owner and holder of the Note.

71. Forte has complied with its obligations under the Note and the Agreement.

72. Quick Health defaulted on its obligations under the Note by failing to make timely payments pursuant to the payment schedule in the Note. Quick Health's

default constitutes a breach.

73. Forte provided the required notice of the default to Quick Health and an opportunity to cure.

74. Quick Health failed to cure the default within 7 days.

75. As of the filing of this Complaint, Forte has been damaged by Quick Health's breach of the Note in the amount of $ 970.964.92, which amount does not include interest, attorneys' fees, or costs.

76. Pursuant to the Note, Forte is entitled to interest at the rate of eighteen percent (18%) per annum on all unpaid amounts, plus reasonable attorneys' fees and costs. (Ex. 2, Note, at Intro. and § 5.)

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff CSG Forte Payments, Inc. prays for judgment against Defendant ABN Network LLC d/b/a Quick Health as follows:

1. For an award of specific performance against Defendant ABN Network LLC d/b/a Quick Health, instructing Defendant to remove the stop payment on its Settlement Account to allow Forte to exercise its right to debit from the Settlement Account the amount Forte is entitled to be made whole;

2. For an award against Defendant ABN Network LLC d/b/a Quick Health, in an amount to be proven at trial for Defendant's breach of the terms of the Agreement and/or Note;

3. For an award of Forte's reasonable attorneys' fees and costs incurred in prosecuting this action, as authorized by the Merchant Services Agreement and Note;

4. For pre- and post-judgment interest at the rate of 18% pursuant to the Note;

5. For any other relief the Court deems just and proper.

## JURY DEMAND

Forte demands a trial by jury on all issues so triable.

Dated: September 12, 2024.

        Respectfully submitted,

        **POLSINELLI PC**

        */s/ Michelle G. Bernstein*
        Michelle G. Bernstein
        315 S. Biscayne Blvd., Suite 400
        Miami, FL 33131
        Telephone:(305) 921-1818
        Facsimile: (305) 921-1801
        mbernstein@polsinelli.com

        Rodney L. Lewis (*pro hac vice forthcoming*)
        150 N. Riverside Plaza, Suite 3000
        Chicago, Illinois 60606
        Telephone: (312) 873-3686
        Facsimile: (312) 819-1910
        rodneylewis@polsinelli.com

        *Counsel for Plaintiff*